# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY A. FRANKLIN, CDCR# E-66269,<br><br>Plaintiff,<br><br>vs.<br><br>L.E. SCRIBNER; D.W. BELL; G.J. GIURBINO; R. MADDEN; T. OCHOA; M.E. BOURLAND; E. TRUJILLO; HALEY; R. NELSON Jr; ORTIZ; VARGAS; M. GREENWOOD; ROBERT BASS; P. ZILL,<br><br>Defendants. | Civil No. 07-0438 BTM (LSP)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 46] |

**I. Procedural Background**

On March 8, 2007, Gregory A. Franklin ("Plaintiff"), a state prisoner currently incarcerated at Calipatria State Prison, proceeding pro se and *in forma pauperis* ("IFP"), filed a Complaint pursuant to 28 U.S.C. § 1983. Defendants Ochoa, Trujillo, Haley, Nelson, Ortiz, Vargas, Scribner, Bell and Madden filed a Motion to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b).[1] Instead of filing an Opposition, Plaintiff sought and received leave of

---

[1] While this matter was referred to Magistrate Judge Leo S. Papas, for disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and S.D. CAL. CIVLR 72.3, the Court has determined that a Report and Recommendation regarding Defendants' Motion to Dismiss is unnecessary. *See* S.D. CAL. CIVLR 72.3(a) (unless all parties consent, dispositive motions filed in § 1983 prisoner cases are referred to

1  Court to file a First Amended Complaint. Plaintiff filed his First Amended Complaint ("FAC")
2  on September 4, 2007. Defendants Bell, Haley, Madden, Ochoa, Ortiz, Nelson, Scribner,
3  Trujillo, Vargas, Zill and Bass filed a second Motion to Dismiss Plaintiff's First Amended
4  Complaint. The Court granted Plaintiff an extension of time to file his Opposition to
5  Defendants' Motion. However, Plaintiff subsequently filed two Oppositions on November 26
6  [Doc. No. 58] and December 27, 2007 [Doc. No. 65]. Both Oppositions appear to be identical
7  and thus, the Court will refer to the Opposition filed on November 26, 2007. Defendants have
8  filed a Reply to the first Opposition filed by Plaintiff [Doc. No. 63].

## II.     Factual Background

Plaintiff alleges that he suffers from an unspecified foot condition. As a result, he was issued a "soft shoe chrono" for the last eleven years. (FAC at 6.) Plaintiff has received surgery for one foot and is awaiting surgery for his other foot. (*Id.*) On September 7, 2005, Plaintiff was told by an unnamed correctional officer that he must wear "shower shoes" to the shower and he would not be permitted to wear his soft shoes that provided more support. (*Id.*) The unnamed correctional officer indicated that this order came from Warden Giurbino and the prohibition on soft shoes in the shower would continue while the prison was on "lockdown" status. (*Id.*)

On that same day, September 7, 2005, Plaintiff's cell was searched by Defendant Bass. Plaintiff alleges that Defendant Bass confiscated Plaintiff's walkman and radio. (*Id.* at 7.) Plaintiff also alleges that Bass took his walkman because Bass realized that he "had a previous unpleasant encounter with [Plaintiff]." (*Id.* at 10.) A few months later, on April 17, 2006, there was another cell search and Plaintiff had further personal items removed from his cell. (*Id.* at 7.) Defendants Ortiz and Vargas informed Plaintiff that they were required to remove these items pursuant to a memorandum issued by Warden Scribner which set forth items inmates were authorized to have in their cell. (*Id.*)

///

///

---

magistrate judges for "proposed findings and recommendations to the district judge, *unless the district judge orders otherwise*.").

Plaintiff further alleges that he was denied "fresh air and recreation" from August 18, 2005 to January 2006 during which time the prison was on "lockdown" status due to a riot. (*Id.* at 8.)  Further, Plaintiff contends that Defendants Scribner, Ochoa, Bourland, Nelson, Greenwood and Madden have "not allowed [Plaintiff] to receive adequate fresh air and recreation from January 2006 [until] the present." (*Id.*)

Plaintiff has a job within the prison as a member of an A-1-A work group.[2] Plaintiff's shift provides for days off on the weekend. (*Id.* at 9)  However, Plaintiff alleges that inmates who are assigned to a different shift, a shift that gets days off during the week, have twice as many recreational hours. (*Id.*)  In addition, Plaintiff alleges that Defendant Zill, on more than one occasion, refused to feed Plaintiff in his cell. (*Id.* at 10)  Plaintiff also claims that Defendant Trujillo fabricated evidence against him resulting in a rules violation report in retaliation for Plaintiff's filing of a grievance against Trujillo. (*Id.*)  Plaintiff also seeks to hold Defendant Bell liable for due process violations because Defendant Bell "screened out" a number of Plaintiff's administrative grievances. (*Id.* at 11.)

**III.     Defendants' Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)**

Defendants move to dismiss Plaintiff's equal protection claims and Plaintiff's retaliation claims as to Bass and Trujillo for failing to exhaust available administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a).

**A.     Standard of Review per FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a)**

Defendants claim Plaintiff failed to exhaust available administrative remedies as to some claims pursuant to 42 U.S.C. § 1997e(a) before bringing this suit, therefore, they seek dismissal under the "non-enumerated" provisions of FED.R.CIV.P. 12(b). The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter of abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss, including a non-enumerated motion under FED.R.CIV.P. 12(b). *See Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837

---

[2] California prisoners in the A-1-A group are assigned to a full-time credit qualifying work, educational, or vocational training program.  As a result, A-1-A inmates earn one-for-one worktime credit, *i.e.,* for every qualifying day's work, the inmates earn a day of credit that may be subtracted from their sentence.  15 CAL. CODE REGS. § 3044(b)(1)

1 F.2d 365, 368-69 (9th Cir. 1988); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (finding a non-enumerated motion under Rule 12(b) to be "the proper pretrial motion for establishing nonexhaustion" of administrative remedies under 42 U.S.C. § 1997e(a)).[3] *Wyatt* also holds that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant prison officials have the burden of raising and proving. *Wyatt*, 315 F.3d at 1119. However, unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120 (citing *Ritza*, 837 F.2d at 369).

### B. Exhaustion of Administrative Remedies per 42 U.S.C. § 1997e(a)

The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). 42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case, *id.* at 525-26, and to encompass inmate suits about both general circumstances and particular episodes of prison life--including incidents of alleged excessive force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (finding that prisoner's civil rights action must be dismissed without prejudice unless prisoner exhausted available administrative remedies *before* he filed suit, even if he fully exhausts while the suit is pending).

////

---

[3] In so finding, the Ninth Circuit also made clear that unlike a motion for summary judgment, "dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits." *Wyatt*, 315 F.3d at 1119 (citation omitted). Thus, if the court finds that the prisoner has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* (citing *Ritza*, 837 F.2d at 368 & n.3).

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS., tit. 15 § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing CAL. CODE REGS. tit. 15 § 3084.5). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections.]" *See* Cal. Dep't of Corrections Operations Manual, § 54100.11, "Levels of Review;" *Barry*, 985 F. Supp. at 1237-38; *Irvin v. Zamora*, 161 F. Supp. 2d 1125, 1129 (S.D. Cal. 2001).

### C. Application of 42 U.S.C. § 1997e(a) to Plaintiff's Case

It is well established that the failure to exhaust administrative remedies is an affirmative defense under the PLRA which the Defendants must plead and prove. *See Jones v. Bock, et al.* __U.S. __, 127 S.Ct. 910 (Jan. 22, 2007). Here, to support their claim that Plaintiff did not exhaust his administrative remedies with respect to his equal protection claim or his retaliation claims against Trujillo and Bass, Defendants provide the declaration of D. Edwards, the Appeals Coordinator at Calipatria State Prison. In this declaration, D. Edwards claims that he has reviewed all administrative grievances filed by Plaintiff while at Calipatria and he could find no grievances alleging denial of equal protection due to Plaintiff's work status or any claims with regard to retaliation by Defendants Trujillo and Bass. *See* Defs.' Mot, D. Edwards Declaration at ¶¶ 4-5.

In Opposition, Plaintiff claims that he did submit an administrative grievance with regard to Defendant Bass but it was "screened out" because it was untimely. *See* Pl.'s Opp'n at 6. However, the Supreme Court has made clear that Plaintiff must "properly exhaust" his administrative remedies before filing a prison conditions action. In *Woodford v. Ngo*, __ U.S. __, 126 S.Ct. 2378 (June 22, 2006), the Supreme Court held that "[p]roper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 126 S.Ct. at 2386. The Court further held that "[proper exhaustion] means ... a prisoner must complete the administrative review process in accordance with the applicable procedural rules ... as a precondition to bring suit in federal court." *Id.*

Plaintiff admits that the grievances with respect to the retaliation claims against Trujillo and Bass were rejected by prison officials as untimely. (Pl.'s Opp'n at 6.) As a result, Plaintiff has failed to rebut Defendants' showing that he failed to properly exhaust his administrative grievances with respect to these claims. Thus, the Court must dismiss Plaintiff's retaliation claims against Trujillo and Bass for failing to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

Plaintiff claims that he did exhaust his equal protection claims and points to his grievance filed on November 28, 2005 in support of a finding that he exhausted this claim. *See* Pl.'s Opp'n at 6. Plaintiff requests that the Court review the grievance previously attached to his Motion for Temporary Restraining Order. *See* Pl.'s Mot. for TRO, Exhibit, Inmate/Parolee Appeal Form Log No. CAL-A-0600565 dated November 28, 2005. The Court liberally construes this as a request for judicial notice.[4] In this grievance, Plaintiff references privileges being revoked due to a lockdown caused by a racial riot. *Id.* The Court cannot find any connection between this grievance filed by Plaintiff and his claims in his First Amended Complaint alleging that members of a different work group had better access to the recreational yard. Thus, the Court finds that Defendants have adequately met their burden to show that Plaintiff did not exhaust his administrative remedies with regard to his equal protection claim pursuant to 42 U.S.C. § 1997e(a).

///

///

---

[4] A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)

1 **IV.  Defendants' Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(6)**

2     **A.    FED.R.CIV.P. 12(b)(6) Standard of Review**

3   A motion to dismiss for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint.  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  *N.L. Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

9   The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim, a complaint cannot be dismissed without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1129-30 (9th Cir. 2000) (en banc) (district court should grant leave to amend when complaint fails to state a claim "unless it determines that the pleading could not possibly be cured by the allegation of other facts" and if "it appears at all possible that the plaintiff can correct the defect") (citations omitted).

17  Where a plaintiff appears pro se, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).  And, while liberal construction is "particularly important in civil rights cases," *Ferdik*, 963 F.2d at 1261, "[t]he plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted).

24    **B.    Eleventh Amendment**

25  Defendants seek dismissal of Plaintiff's claims for monetary damages to the extent that he is suing them in their "official capacity."  *See* Defs.' Mot. at 12.  While the Eleventh Amendment bars a prisoner's section 1983 claims against a state actor sued in his official capacity, it does not bar damage actions against a state official sued in his personal or individual

capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992). When a state actor is alleged to have violated both federal and state law and is sued for damages under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. *Ashker v. California Dep't of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997).

Here, Plaintiff brings this § 1983 suit against Defendants in their official capacities. (FAC at 2.) The Eleventh Amendment imposes no bar to Plaintiff's damages action against Defendants for acts alleged to have been taken in their personal capacity. *See Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995). The Supreme Court has made it clear that a plaintiff can seek damages in a section 1983 action if he alleges facts sufficient to show personal liability through individual actions or omissions, taken under color of state law, which cause the deprivation of Plaintiff's constitutional rights. *Hafer*, 502 U.S. at 25.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss on Eleventh Amendment grounds only to the extent that Plaintiff seeks damages against them in their official capacities.

### C.  **Plaintiff's Eighth Amendment Claims** - **Inadequate Medical Care**

Defendants also seek to dismiss Plaintiff's Eighth Amendment claims regarding deliberate indifference to a serious medical need. The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle*, 429 U.S. at 105. "Medical" needs include a prisoner's "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must allege facts which demonstrate that he was confined under conditions posing a risk of "objectively, sufficiently serious" harm and that prison officials had a "sufficiently culpable state

of mind" in denying him proper medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted). Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (quotations omitted); *Lopez*, 203 F.3d at 1131-32; *see also Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain).

However, the subjective component requires the prisoner to also allege facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057.

Here, liberally construing Plaintiff's claims, the Court finds that Plaintiff's allegations with regard to his foot issues are sufficient to support the "objective" component in that he appears to have a serious medical need which has required surgery and the need to wear soft sole shoes. In order for deliberate indifference to be established, a defendant must purposefully ignore or fail to respond to a prisoner's prior or possible medical need. *See McGuckin,* 974 F.2d at 1060; *Toguchi*, 391 F.3d at 1057. This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

Here, Plaintiff apparently seeks to hold these Defendants liable because they instituted a policy that required inmates to wear "shower shoes" to the shower. (FAC at 6.) Plaintiff claims that wearing these shoes caused harm to his medical condition. (*Id.*) While that may be true, there is simply no allegation from which the Court could find that these Defendants were even made aware of Plaintiff's medical condition, let alone intentionally disregarded the need for him to wear soft shoes. Plaintiff has attached documents, including his administrative grievances, that seem to indicate that some Defendants were aware of his medical need but refused to accommodate that medical need. However, Plaintiff must allege specific facts as to each Defendant he seeks to hold liable for this alleged "deliberate indifference" by specifying what they actually knew with regard to his serious medical need. The mere fact that there was a policy requiring inmates to wear shower shoes, without specific knowledge that such a policy would cause harm to Plaintiff, is not sufficient to state an Eighth Amendment claim.

For these reasons, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's inadequate medical treatment claims pursuant to FED.R.CIV.P. 12(b)(6) but will give Plaintiff the opportunity to file a Second Amended Complaint.

### D. Eighth Amendment - Outdoor Exercise Claims

In his First Amended Complaint, Plaintiff alleges that he was denied outdoor exercise from August 18, 2005 until January 2006. (FAC at 8.) Defendants seek dismissal of this claim because they claim that Plaintiff's First Amended Complaint, in fact, implies that Plaintiff did receive some outdoor exercise during this time period and it was not a total deprivation of outdoor exercise.

"Whatever rights one may lose at the prison gates, ... the full protections of the eighth amendment most certainly remain in force. The whole point of the amendment is to protect persons convicted of crimes." *Spain v. Procunier*, 600 F.2d 189, 193-94 (9th Cir. 1979) (citation omitted). The Eighth Amendment, however, is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981); *Hoptowit*, 682 F.2d at 1246. Rather, the Eighth Amendment proscribes the "unnecessary and wanton infliction of pain,"

1 which includes those sanctions that are "so totally without penological justification that it results
2 in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976);
3 *see also Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 347. This includes not only physical
4 torture, but any punishment incompatible with "the evolving standards of decency that mark the
5 progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958); *see also Estelle*, 429
6 U.S. at 102.

7 As with Plaintiff's other Eighth Amendment claim, to assert an Eighth Amendment claim
8 for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements:
9 one objective and one subjective. *Farmer*, 511 U.S. at 834; *Allen v. Sakai*, 48 F.3d 1082, 1087
10 (9th Cir. 1994).

11 "Under the objective requirement, the prison official's acts or omissions must deprive an
12 inmate of the minimal civilized measure of life's necessities." *Id.* This objective component is
13 satisfied if the institution fails to provide sentenced prisoners with adequate food, clothing,
14 shelter, sanitation, medical care, and personal safety. *Hoptowit*, 682 F.2d at 1246.

15 As stated above, the subjective requirement, relating to the defendants' state of mind,
16 requires "deliberate indifference." *Allen*, 48 F.3d at 1087. In his First Amended Complaint,
17 Plaintiff alleges: (1) that he was completely deprived of "fresh air and recreation" for a period
18 from August 18, 2005 to January, 2006; and (2) that Defendants Scribner, Ochoa, Bourland,
19 Nelson, Greenwood, and Madden have not allowed Plaintiff to "receive adequate fresh air and
20 recreation from January 2006 [to] the present." (FAC at 8.) In *Spain*, the court stated that
21 "regular outdoor exercise is extremely important to the psychological and physical well being
22 of the inmates." *Spain*, 600 F.2d at 199.

23 With respect to the total deprivation of outdoor exercise from August 2005 until January
24 2006, Plaintiff alleges that this was due to the actions of Defendant Giurbino. (FAC at 8.)
25 However, Plaintiff has yet to serve Defendant Giurbino in this matter. Accordingly, while these
26 facts may rise to the level of a constitutional violation, Plaintiff must first properly serve
27 Defendant Giurbino before he can proceed on this claim.
28 ////

With respect to the remaining time period, it appears that Plaintiff has had some outdoor exercise since January 2006 but he feels that it has been inadequate. (*Id.*) The Ninth Circuit has found that total deprivation of outdoor exercise is sufficient to satisfy the objective requirement for stating an Eighth Amendment claim. *See Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000). Based on Plaintiff's First Amended Complaint, it appears that he is not claiming that Defendants Scribner, Ochoa, Bourland, Nelson, Greenwood or Madden have totally deprived him of outdoor recreation. (FAC at 8.) Thus, the Court finds that to state an Eighth Amendment claim with respect to inadequate recreational time, Plaintiff would have to allege facts sufficient to demonstrate that prison officials acted with "deliberate indifference to an excessive risk to inmate health." *Farmer*, 511 U.S. at 837.

Plaintiff would have to allege the complete deprivation of outdoor exercise or clarify the amount he received from January 2006 to the present for the Court to determine whether the actions of the Defendants rise to the level of an Eighth Amendment constitutional violation.

Accordingly, the Court **GRANTS** Defendants Scribner, Ochoa, Bourland, Nelson, Greenwood, and Madden's Motion to Dismiss Plaintiff's Eighth Amendment outdoor exercise claims pursuant to FED.R.CIV.P. 12(b)(6).

### E. First Amendment Retaliation Claims

Because Plaintiff has failed to exhaust his administrative remedies with respect to his retaliation claims against Defendants Bass and Trujillo, the Court will only address the remaining retaliation claims against Defendant Zill. In his First Amended Complaint, Plaintiff's only retaliation claims against Defendant Zill are that he failed to feed him on several occasions in March and April of 2006. (FAC at 10.)

A plaintiff suing prison officials pursuant to § 1983 for retaliation must allege sufficient facts to show: (1) he was retaliated against for exercising his constitutional rights; (2) the alleged retaliatory action "does not advance legitimate penological goals, such as preserving institutional order and discipline," *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); and (3) the defendants' actions harmed him. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997)*; Rhodes v. Robinson*, 408

F.3d 559, 567-68 (9th Cir. 2005).

Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt,* 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). Thus, the burden is on the prisoner to allege facts which demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." *Id.* at 808.

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). However, Plaintiff makes no such claim with regard to Defendant Zill. He merely alleges that Zill refused to feed him on an unspecified number of occasions but he does not allege that Zill's actions were in any way retaliation for any action whatsoever on the part of Plaintiff.

In addition, the Court finds that Plaintiff has failed to allege facts sufficient to show that the actions of Defendant Zill were retaliatory because he has failed to show that Zill's actions lacked or failed to advance "legitimate penological goals such as preserving institutional order and discipline." *Barnett*, 31 F.3d at 815-16; *Pratt*, 65 F.3d at 808; *Bruce*, 351 F.3d at 1289. For all these reasons, Defendants' Motion to Dismiss Plaintiff's retaliation claims against Defendant Zill is also GRANTED for failure to state a claim upon which relief can be granted pursuant to FED.R.CIV.P. 12(b)(6).

### F.     Fourteenth Amendment Due Process Claims

Defendant Bell seeks dismissal of Plaintiff's claims that Bell violated his due process rights when he allegedly "lost, discarded, substantially delayed or misrepresented" Plaintiff's inmate grievances. (FAC at 11.)

The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally protected liberty or property interest is at stake. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997). The Ninth Circuit has held that prisoners have no protected property interest in an inmate grievance procedure. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process

1  claim of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison]
2  grievance procedure"). A prisoner may only challenge a state action which does not restrain a
3  [constitutionally] protected liberty interest if that state action "nonetheless imposes some
4  'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison
5  life.'" *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *see also Neal*, 131 F.3d at 827-28.

6  Here, Plaintiff pleads no facts to suggest how Bell's allegedly inadequate review and
7  consideration of his inmate grievances amounted to a restraint on his freedom not contemplated
8  by his original sentence or resulted in an "atypical" and "significant hardship." *Sandin*, 515 U.S.
9  at 483-484. Accordingly, the Court also GRANTS Defendants' Motion to Dismiss Plaintiff's
10 grievance procedure due process claims against Defendant Bell pursuant to FED.R.CIV.P.
11 12(b)(6).

### G. Access to Courts

13 Defendant Bells also seeks to dismiss Plaintiff's claims that Defendant Bell violated his
14 right to access to the courts. Prison officials who deliberately interfere with the transmission of
15 a prisoner's legal papers, or deny him access to a legitimate means to petition for redress for the
16 purpose of thwarting his litigation may violate the prisoner's constitutionally protected right to
17 access to the court. *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996); *Vandelft v. Moses*, 31 F.3d
18 794, 796 (9th Cir. 1994). However, in order to state a claim for denial of access to the courts,
19 Plaintiff must allege a specific actual injury involving a nonfrivolous legal claim, *Lewis*, 518
20 U.S. at 351-55, and must allege facts showing that he "could not present a claim to the courts
21 because of the [Defendants'] failure to fulfill [their] constitutional obligations." *Allen v. Sakai*,
22 48 F.3d 1082, 1091 (9th Cir. 1994). The right of access is only guaranteed for certain types of
23 claims: direct and collateral attacks upon a conviction or sentence, and civil rights actions
24 challenging the conditions of confinement. *Lewis,* 518 U.S. at 354. Even among these types of
25 claims, actual injury will exist only if "a nonfrivolous legal claim had been frustrated or was
26 being impeded." *Id.* at 353 & n.3.

27 ///
28 ///

Here, Plaintiff fails to allege any facts to show how or to what extent he was "actually injured" by the actions of Defendant Bell. *See Lewis*, 518 U.S. at 351-55. Accordingly, the Court grants Defendant Bell's Motion to Dismiss Plaintiff's access to courts claim.

### H. Qualified Immunity

Defendants also seek dismissal of Plaintiff's First Amended Complaint on qualified immunity grounds. However, because the Court has dismissed the entirety of Plaintiff's action, the Court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

## V. Conclusion

For all the reasons set forth above, the Court hereby:

(1) GRANTS Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to FED.R.CIV.P. 12(b) and 12(b)(6) [Doc. No. 46] and DISMISSES the entire action without prejudice based on Plaintiff's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) and failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6);

(2) GRANTS Plaintiff sixty (60) days leave to file and serve upon Defendants an Amended Complaint which addresses each deficiency of pleading identified in this Order. Plaintiff's Amended Complaint must be complete in itself without reference to his original Complaint. *See* S.D.CAL.CIVLR 15.1. Any Defendant not named and any claim not re-alleged in the Amended Complaint will be considered waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

**IT IS SO ORDERED**.

DATED: March 4, 2008

Honorable Barry Ted Moskowitz
United States District Judge